■ GEORGE L. MARCUS, Appellant, v COUNTY OF NASSAU, Respondent. — In a negligence action to recover damages for personal injuries, plaintiff appeals from a judgment of the Supreme Court, Nassau County (Robbins, J.), dated April 5, 1982, which was in favor of defendant, upon a jury verdict, after a trial limited to the issue of liability. Judgment reversed, on the law, and new trial granted, with costs to abide the event. On Sunday, August 5, 1979, at approximately 12:30 P.M., the 50-year-old plaintiff was driving his moped in a northerly direction on South Franklin Street in Hempstead, New York. South Franklin Street is a six-lane road, with two lanes for traffic in each direction and a parking lane on each side. The plaintiff was riding in the northbound lane next to the parking lane. Just before he reached the intersection with Windsor Parkway the front wheel of his moped suddenly dropped into a trench or depression in the roadway. Plaintiff lost control, the moped fell over and plaintiff was dragged sideways along the ground. The trench or depression had been created by the defendant County of Nassau's highway construction crew as part of the process of repairing a "pop-up" or bump in the road. The procedure employed to level the road was to "cut out" the bump, lay down a mixture of stone and tar ("45 SM binder"), compact the mixture with a heavy roller and thereafter pave the road with asphalt. Pursuant to regulations of the Nassau County Department of Highways, the compacted surface of the binder prior to the installation of the asphalt was to be approximately two inches below the roadway surface. On the Thursday and Friday preceding the accident, August 2 and 3, the county's repair crew had cut out of the road an area extending 10 feet across the width of the lane in which plaintiff was riding and three feet along its length and laid down and compacted the binder. They had not, however, installed the asphalt paving when they left the site for the weekend. They did, however, remove their trucks, the roller and all warning lights, barricades and cones. It rained heavily on Saturday, August 4, but on Sunday at the time of the accident it was bright and sunny and there was no other traffic. The plaintiff testified that he was traveling at a maximum speed of 15 to 20 miles per hour and there did not appear to be anything "wrong" with the road when, "in a flash", the front wheel of the moped sank into a ditch five or six inches deep which was full of water. A cab driver testified that the depression was two to three inches deep. The "lead man" of the repair crew and a police officer stated that it was one and one-half to two inches in depth. The standard procedure of the county's department of highways was not to use barricades where the depression was two inches or less below the finished grade level. The lead man testified that "water would go through it [the binder], given time" but he did not "have any idea" how much time would be needed. It was error for the trial court to charge the jury that if it found that the depression was two inches or less in depth, it must find in favor of the county as a matter of law. It is undisputed that the county is under

a nondelegable duty to the traveling public to maintain its roads and highways in a reasonably safe condition (*Lopes v Rostad,* 45 NY2d 617, 623-624). There is no rule that a defect must be of certain minimum dimensions in order to render a municipality liable for injuries sustained thereby (see *Smith v City of New York,* 38 AD2d 965, and cases cited therein). The trial court's error was compounded by its charge that the county was not required to take "extraordinary precautions for mopeds"; that if the jury found that the roads were in a reasonably safe condition for "ordinary vehicles", the jury was to find that the county was not negligent. The county concedes that the charge was "not as clear as it should have been" and that it owes a duty of reasonable care to the operator of a moped. There was further error in the court's refusal to submit to the jury the issue of whether the depression was in the nature of a trap in that the collection of water in the trench could create the impression that there was one uniform level surface, as the plaintiff testified. Under the circumstances, a new trial is required. Mollen, P. J., Titone, Bracken and Brown, JJ., concur.